**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HUDSON INSURANCE COMPANY, a Delaware Corporation,<br><br>           Plaintiff,<br>  vs.<br><br>JAMES MILLER, individually; ARTURO MONTES, individually; JESUS MONTES, individually; EFRAIN MEZA-MONTES, individually; JOHN DOES 1-100, inclusive; and JANE DOES 1-20, inclusive,<br><br>           Defendants.<br><br>COLONIAL FREIGHT SYSTEMS, INC.,<br><br>           Intervenor, | Case No.: 2:15-cv-00349-GMN-CWH<br><br>**ORDER** |

Pending before the Court is a Motion to Dismiss (ECF No. 23), Countermotion for Summary Judgment (ECF No. 33), and Motion to Strike (ECF No. 45) filed by Plaintiff Hudson Insurance Company.  Also pending before the Court is a Motion for Summary Judgment (ECF No. 24) filed by Intervenor Colonial Freight Systems, Inc.  Moreover, pending before the Court is a Motion to Amend (ECF No. 26) filed by Defendant James Miller.  All of the instant motions have been fully briefed.

**I.    BACKGROUND**

This case arises out of an automobile accident that occurred on August 3, 2013 in Las Vegas, Nevada, involving Defendants James Miller, Arturo Miller, Jesus Montes, and Efrain Meza-Montes. (Compl. ¶ 15, ECF No. 1).  Although the parties dispute the legal implications of the facts in this case, the following facts essential to the disposition of the instant motions are undisputed.

Intervenor Colonial Freight Systems, Inc. ("Colonial") "is engaged in the interstate transportation of commodities as a contract and common carrier under authority from the Interstate Commerce Commission." (Lease Agreement at 1, ECF No. 24-2).  On June 1, 2012, Defendant James Miller ("Miller") entered into a Lease Agreement with Colonial, whereby Miller was an independent contractor and drove a leased truck on behalf of Colonial. (Dep. James Miller 12:4–13:24, ECF No. 24-3).  As an independent contractor, Miller would call Colonial and ask if they had a load that Miller could accept, and if so, Miller could accept or decline the offered load. (*Id.* 35:18–36:1).

A few days before the accident at issue, Miller called Colonial and was informed that Colonial has a load for pickup in Rock Hill, South Carolina to be delivered in Las Vegas, Nevada. (*Id.* 36:2–14, 37:3–10).  Miller accepted the load in Rock Hill, and delivered the load in Las Vegas on August 3, 2013. (*Id.* 39:3–7; 42:12–15).  Sometime between 11:00 p.m. and 11:30 p.m., Miller dropped off the loaded trailer at the destination in Las Vegas. (*Id.* 42:12–19). Miller proceeded to looked for an empty trailer, and when he couldn't find one, Miller asked the security guard at the destination if he could come back the next morning as soon as there was another trailer for him to pick up. (*Id.* 43:25–45:21).  As Miller pulled out of the gate at the destination, he parked on the side of the road and called Colonial to let them know that he was empty, or driving his tractor without a trailer, and was headed to a truck stop. (*Id.* 45:22–46:10).  During the call, Miller acknowledged that Colonial did not have a load for him to accept at that time and informed Colonial that he would call back the next morning to find out if there was a load available for him to accept. (*Id.* 47:16–49:4).  At no time during the trip from Rock Hill to Las Vegas was Miller informed by Colonial that they would have a load for him to haul on his return trip back to the East Coast. (*Id.* 49:14–50:3).

After the call, Miller proceeded to drive his tractor to the TA Truck Stop in Las Vegas. (*Id.* 50:4–8).  Miller intended to stay at the TA Truck Stop to rest until Colonial had another

load to return to the East Coast. (*Id.* 53:17–54:10).  While Miller was en route to the TA Truck Stop, he rear-ended an automobile occupied by Defendants Arturo Miller, Jesus Montes, and Efrain Meza-Montes on Interstate 15. (Compl. ¶ 15; Dep. James Miller 54:15–55:21). Following the accident, Miller called Colonial to inform them that he had been involved in the accident. (Dep. James Miller 55:22–56:3).  Shortly thereafter, an in-house attorney from Colonial called Miller and instructed him to not talk to the other driver involved in the accident, to take pictures at the accident scene, and to take video at the accident scene. (*Id.* 56:4–24).  A few days after the accident, Miller picked up a load for Colonial and delivered it to the East Coast. (*Id.* 60:14–61:20).

Pursuant to the Lease Agreement, Miller was required to maintain non-trucking liability or "bobtail" insurance. (Lease Agreement ¶ 10(a)).  At the time of the accident at issue, Miller was the named insured on a Non-Trucking Automobile Liability Insurance policy ("Non-Trucking policy") provided by Plaintiff Hudson Insurance Company ("Hudson"). (Ex. C to Compl., ECF No. 1).  The pertinent portions of Non-Trucking policy are as follows:

> This policy does not provide commercial trucking liability coverage for commercial operations that are intended to generate economic or commercial benefit.  Instead, this policy supplements your commercial trucking liability coverage to provide Non-Trucking Liability Coverage.  The Non-Trucking Liability Coverage provided by this policy expressly excludes coverage for any covered auto "while used to carry property in any business or en route for such purpose" or "while used in the business of anyone to whom the auto is rented" (See Section II - Liability Coverage, B. Exclusion 15).

> \*\*\*

> SECTION II – LIABILITY COVERAGE
> A. Coverage
>     We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

\*\*\*

B. Exclusions
This insurance does not apply to any of the following:

\*\*\*

15. Business Purpose
Bodily injury or property damage arising from the use of a covered auto:
a. while used to carry property in any business or en route for such purpose
b. while used in the business of anyone to whom the covered auto is rented.

(*Id.*).

Hudson filed its Complaint in the instant action on February 27, 2015, seeking declaratory relief. (Compl. ¶¶ 24–27). Specifically, Hudson seeks the following declaration from the Court:

a. At the time of the subject motor vehicle accident, the tractor trailer driven by MILLER was in use and operation to carry out the business purposes of MILLER and Colonial Freight Systems, Inc.;
b. The Business Purpose Exclusion contained in the HUDSON Policy issued to MILLER is applicable to the facts and circumstances of the subject motor vehicle accident and precludes coverage for any damages claimed as a result thereof; and
c. HUDSON owes no duty to defend or indemnify MILLER as a result of the subject motor vehicle accident.

(*Id.* ¶ 26). On April 29, 2015, Miller filed an Answer, asserting the following counterclaims: (1) breach of contract; (2) bad faith; and (3) violation of NRS 686A.310. (Answer ¶¶ 21–42, ECF No. 11).

## II.     CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B. Discussion**

In its Motion for Summary Judgment, Colonial seeks a finding that Hudson's Non-Trucking policy provides coverage to Miller for the August 3, 2013 motor vehicle accident. (Mot. Summ. J. 30:11–13, ECF No. 24). On the other hand, in its Countermotion for Summary Judgment, Hudson seeks a finding that its Non-Trucking policy does not provide coverage to Miller for the August 3, 2013 motor vehicle accident because Miller was acting in the business of Colonial at the time of the accident and the Business Purpose Exclusion of the Non-Trucking policy precludes coverage. (Countermot. Summ. J. 26:18–27, ECF No. 33).

/ / /

1. Choice of Law

As a preliminary matter, the parties disagree over the choice of law in this case. (*See* Response to Mot. Summ. J. 10:3–11:8, ECF No. 32; Reply to Mot. Summ. J. 8:12–11:3, ECF No. 41). "Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)). Nevada employs the "substantial relationship" test for determining what state's law applies in a contract case. *Consol. Generator–Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1253 (Nev. 1998). Five factors govern this analysis: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* at 1253–54.

Here, Hudson argues that under the "substantial relationship" test, North Carolina law applies in this case. (Response to Mot. Summ. J. 10:3–11:8). However, Colonial argues that Tennessee law applies. (Reply to Mot. Summ. J. 8:12–11:3). The Certificate of Non-Trucking Automobile Liability Insurance ("Certificate") provided that coverage was in the name of Miller and provided a residential address on behalf of Miller located in North Carolina. (Ex. C to Compl., ECF No. 1). Moreover, the Certificate provided that coverage was afforded to a tractor registered in North Carolina. (*Id.*). Although Colonial, which is located in Tennessee, was the holder of the Certificate as the lessee/motor carrier, the Court finds that, because the subject matter of the insurance policy—the tractor leased by Miller—was registered and primarily located in North Carolina at the time of contracting and Miller, the insured, was domiciled in North Carolina, North Carolina law applies in this case pursuant to the "substantial relationship" test.

/ / /

### 2. Ambiguity

Under North Carolina law, the primary goal in interpreting an insurance policy is to discern the intent of the parties at the time the policy was issued. *See Woods v. Nationwide Mut. Ins. Co.*, 505, 246 S.E.2d 773, 777 (N.C. 1978); *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 146 S.E.2d 410, 416 (N.C. 1966). If the terms of the policy are "'plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms.'" *Klein v. Avemco Ins. Co.*, 220 S.E.2d 595, 597 (N.C. 1975) (quoting *Walsh v. United Ins. Co.*, 144 S.E.2d 817, 820 (N.C. 1965)). "'If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder.'" *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 388 S.E.2d 557, 563 (N.C. 1990) (quoting *Woods*, 246 S.E.2d at 777).

The parties dispute whether the phrase "in the business of" in the Business Purpose Exclusion is ambiguous. However, in *McLean Trucking Co. v. Occidental Fire & Cas. Co. of N.C.*, 324 S.E.2d 633 (N.C. Ct. App. 1985), *disc. review denied* 330 S.E.2d 611 (N.C. 1985), the North Carolina Court of Appeals held, while analyzing a nearly identical business purpose exclusion, that the phrase "in the business of" is ambiguous. 324 S.E.2d at 636. Accordingly, because the policy is ambiguous, the Court could resolve this doubt against Hudson and find in favor of Miller. However, after finding that the phrase "in the business of" is ambiguous, the *McLean* court does not end its analysis.

### 3. Application of the Business Purpose Exclusion

Under North Carolina law, "the phrase 'in the business of' is best defined in the common law doctrine of *respondeat superior*." *McLean*, 324 S.E.2d at 636. "[I]n order to predicate liability under this doctrine the employee would have to be within the scope of

employment, furthering the business of the employer at the time of the accident, therefore, 'in the business of' the lessee." *Id.* (citing *Passmore v. Smith*, 147 S.E.2d 238 (N.C. 1966)).

The primary inquiry in determining vicarious liability under the doctrine of *respondeat superior* is whether the principal retains the right to control and direct the details of the work. *Vaughn v. Dep't of Human Res.*, 252 S.E.2d 792, 795 (N.C. 1979). Where an employer retains the right to control and direct the details of the work, the employee's acts done in furtherance of the employer's business may be said to have been done in the scope of employment, or in the context of this case, "in the business of" the employer. It is a general rule that an employee is not engaged "in the business of" the employer while driving to and from the place of employment. *McLean*, 324 S.E.2d at 637. However, where the employee is acting at the direction of, or in the performance of some duty owed to, the employer when making the trip, the employee may be said to be acting in the scope of employment. *See Powers v. Lady's Funeral Home*, 295 S.E.2d 473 (N.C. 1982) (worker's compensation case where employee injured while returning to his home while on-call; held injury compensable as occurring within course and scope of employment); *Evington v. Forbes*, 742 F.2d 834 (4th Cir. 1984) (applying North Carolina law and holding employee returning to work while on "call-back" status was acting within scope of employment).

Here, the Court finds that the facts, viewed in a light most favorable to Hudson, demonstrate that Miller was not furthering the business of Colonial at the time of the accident.[1] First, Miller had completed his load from Rock Hill, South Carolina to Las Vegas, Nevada before the accident occurred. (Dep. James Miller 39:3–7; 42:12–15). Second, at the time of the accident, Miller had not accepted another load from Colonial, was not under dispatch by

---

[1] In its Response to Colonial's Motion for Summary Judgment and its Motion to Strike, Hudson makes many objections primarily related to evidence and argument regarding previous handling of claims by Hudson. (*See* Response 5:13–10:2; Mot. Strike, ECF No. 45). However, these arguments and the evidence to which Hudson objects are not relevant to the disposition of the instant motions or relied upon by the Court for such disposition. Accordingly, the Court denies Hudson's Motion to Strike as moot.

Colonial, and was not on a "call back" status with Colonial. (*Id.* 47:16–49:4). Moreover, Miller was not obligated to accept a load by Colonial for his return trip to the East Coast. (*Id.* 53:17–54:10). Third, while Miller was headed to the TA Truck Stop to rest, he was not acting at the direction of Colonial. (*Id.* 45:22–46:10). Therefore, the Business Purpose Exception of the Non-Trucking policy does not apply to the August 3, 2013 motor vehicle accident. Accordingly, the Court finds that, because the Business Purpose Exception of the Non-Trucking policy does not apply, the Non-Trucking policy provides coverage to Miller for the August 3, 2013 motor vehicle accident, and the Court grants summary judgment against Hudson and in favor of Defendants as to Hudson's declaratory relief claim.

### III.  MOTION TO DISMISS

#### A. Legal Standard

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant

to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B. Discussion**

In its Motion to Dismiss, Hudson argues that all of Miller's counterclaims should be dismissed. (Mot. Dismiss 4:3–9, ECF No. 23). Accordingly, the Court addresses each counterclaim in turn under North Carolina law, as discussed above.

1. Breach of Contract

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). In his Counterclaim, Miller alleges that Hudson "entered into a binding written agreement with Miller to defend and indemnify him against liability arising from his operation of the vehicle during the time when he not under any direction or control of Colonial Freight Systems." (Counterclaim ¶ 22, ECF No. 11). Moreover, Miller alleges that Hudson "has materially breached the contract of insurance by refusing to perform its obligation under that Policy." (*Id.* ¶ 25).

Hudson argues that the Business Purpose Exception of the Non-Trucking policy applies to the accident at issue and precludes coverage under the Non-Trucking policy. (Mot. Dismiss 10:1–18). For the reasons discussed above, the Court finds that the Business Purpose Exception does not apply to the accident at issue, and Miller has sufficiently pled a breach of contract counterclaim. Accordingly, the Court denies Hudson's Motion to Dismiss as to this claim.

/ / /

2. Bad Faith

Under North Carolina law, the elements of an unfair settlement practice claim, also known as a bad faith claim, are: "(1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. Ct. App. 1993). "[B]ad faith means not based on honest disagreement or innocent mistake." *Lovell*, 424 S.E.2d at 185.

Here, Miller alleges that Hudson "denied Miller's insurance claim for defense and indemnification," "does not have a reasonable basis to deny Miller's insurance claim for defense and indemnification," and "knew or had reason to know that its denial of coverage was unreasonable." (Counterclaim ¶¶ 32–34). Taking these allegations as true, the Court finds that Miller has sufficiently pled a bad faith claim. Accordingly, the Court denies Hudson's Motion to Dismiss as to this claim.

3. Violation of NRS 686A.310

As discussed above, North Carolina law is the appropriate choice of law in this case. Therefore, the Court dismisses this claim because it is based upon Nevada statutory law. However, the Court finds that Miller could amend his Counterclaim to assert a similar claim under North Carolina statutory law and will grant Miller leave to do so. Accordingly, the Court grants Hudson's Motion to Dismiss as to this claim.

### IV. MOTION TO AMEND

**A. Legal Standard**

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*,

203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### B. Discussion

Miller seeks leave to amend his Counterclaim "to specify that he intends to seek punitive damages even though the same are assumed in a bad faith claim and claim for violation of N.R.S. 686A.310." (Mot. Amend 3:22–25).  As explained above, the Court dismisses Miller's counterclaim for violation of NRS 686A.310.  However, the Court grants Miller leave to amend his Counterclaim to assert a similar claim under North Carolina law.  Moreover, the Court finds that amendment to specify that Miller intends to seek punitive damages would not be futile.  Accordingly, the Court grants Miller's Motion to Amend.

Miller shall file his amended counterclaim within fourteen (14) days of the date of this Order if he intends to assert a counterclaim under North Carolina statutory law that is similar to his now dismissed counterclaim for violation of NRS 686A.310.  Moreover, Miller may further amend his Counterclaim to specify that he intends to seek punitive damages.

### V. CONCLUSION

**IT IS HEREBY ORDERED** that Colonial's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.  Accordingly, the Court grants summary judgment against Hudson and in favor of Defendants as to Hudson's declaratory relief claim.  However, Miller's counterclaims remain to be determined.

**IT IS FURTHER ORDERED** that Hudson's Countermotion for Summary Judgment (ECF No. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Hudson's Motion to Strike (ECF No. 45) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Hudson's Motion to Dismiss (ECF No. 23) is **GRANTED in part** and **DENIED in part**. Specifically, Miller's counterclaim for violation of NRS 686A.310 is dismissed with leave to amend.

**IT IS FURTHER ORDERED** that Miller's Motion to Amend (ECF No. 26) is **GRANTED**. Accordingly, Miller shall file his amended counterclaim within fourteen (14) days of the date of this Order if he intends to assert a counterclaim under North Carolina statutory law that is similar to his now dismissed counterclaim for violation of NRS 686A.310. Moreover, Miller may further amend his Counterclaim to specify that he intends to seek punitive damages.

**DATED** this \_\_14\_\_ day of April, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge